UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

In re:

THE ESTATE OF SALLY GROSSMAN

1:21-cv-01145
(BKS/ATB)

_____

AMERICAN INSTITUTE OF INDIAN STUDIES,

                Petitioner,

v.

PETER M. HOFFMAN, as Trustee of Albert B. Grossman Marital Trust,

                Respondent,

and

NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL,

                Intervenor.[1]

_____

**Appearances:**

*For Petitioner:*
Daniel W. Coffey
Coffey Law PLLC
17 Elk St.
Albany, NY 12207

---

[1] The party seeking removal, Peter M. Hoffman, identified the action being removed as "*American Institute of Indian Studies v. Peter M. Hoffman, Trustee,*" and used that caption in this Court. The underlying case in the Surrogate's Court of Ulster County is captioned "*In the Matter of the Estate of Sally Grossman.*" (Dkt. No. 9-11, at 2; Dkt. No. 23-2, at 1).

*For Respondent:*
Joseph F. Castiglione
Young/Sommer LLC
Executive Woods
Five Palisades Dr.
Albany, NY 12205

*For Intervenor*:
Letitia James
Attorney General of the State of New York
James G. Sheehan
Assistant Attorney General-in-Chief
Nathan M. Courtney
Assistant Attorney General
Charities Bureau
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM DECISION AND ORDER**

**I.      INTRODUCTION**

On September 21, 2021, The American Institute of Indian Studies ("AIIS") petitioned the Surrogate's Court of the State of New York, County of Ulster ("Surrogate's Court") for an order directing, inter alia, that the assets in a testamentary charitable remainder trust ("the Trust") created by the will of Albert B. Grossman be turned over to AIIS, in accord with his deceased wife's exercise of her power of appointment. (Dkt. No. 2, at 3–5). Surrogate's Court issued an order to show cause on September 28, 2021 in response to the petition and, after hearing from the parties, issued an order on October 13, 2021 directing that the trustee of the Trust, Peter M. Hoffman, preserve Trust assets. (Dkt. No. 1-1, at 2–3; Dkt. No. 9-11, at 2). The order directed that Hoffman was "prohibited from encumbering, assigning, transferring, pledging, hypothecating or in any manner spending trust assets or the proceeds thereof or income stream thereof without further order of" Surrogate's Court. (Dkt. No. 9-11, at 2). Six days later,

Hoffman filed a notice of removal of the Surrogate's Court action in this Court, asserting that this Court has diversity jurisdiction under 28 U.S.C. § 1332. (Dkt. No. 1, ¶ 6). Hoffman moved for a temporary restraining order on October 25, 2021, requesting, inter alia, that AIIS be enjoined from pursuing further proceedings in Surrogate's Court during the pendency of this action. (Dkt. No. 9). On October 26, 2021, the Court ordered briefing on the basis for diversity jurisdiction, and whether the Court should decline subject matter jurisdiction under the probate exception. (Dkt. No. 12).

The jurisdictional issues have been extensively briefed. (*See* Dkt. Nos. 15, 19, 35, 40 (letter briefs submitted by Hoffman); Dkt. Nos. 20, 39 (letter briefs submitted by AIIS); and Dkt. Nos. 26, 41 (letter briefs submitted by the Charities Bureau of the Office of the Attorney General of the State of New York)). Having reviewed all the briefing, the Court finds that it lacks subject matter jurisdiction over this matter pursuant to the probate exception and remands this action back to Surrogate's Court for further proceedings.

## II. STATUS OF THE ATTORNEY GENERAL

The New York State Attorney General's Charities Bureau submitted a letter brief on November 15, 2021, asserting that "as a party to the state court proceeding, the Attorney General is a necessary party to this federal action," citing Fed. R. Civ. P. § 24(a)(2), which governs intervention as of right. (Dkt. No. 26, at 1). In a later letter brief, in support of its assertion that it is a party that does not need to file a motion to intervene, the Attorney General cites to the fact that it was listed as an interested party in the order to show cause, that the Attorney General filed a notice of appearance in Surrogate's Court, that the Attorney General's counsel appeared at the return date for the order to show cause, and that the Attorney General has a statutory obligation to represent the beneficiaries of "dispositions for religious, charitable, educational or benevolent purposes," and "to enforce the rights of such beneficiaries by appropriate proceedings in the

courts." (Dkt. No. 41, at 1–2) (citing N.Y. Est. Powers & Trusts Law § 8-1.1(f)). Hoffman objects to the Court's consideration of the Attorney General's briefing on the jurisdictional issues, asserting that it has not filed a motion to intervene and also asserting, without authority, that the jurisdictional issues in this case are beyond the Attorney General's statutory responsibilities. (Dkt. No. 35, at 7).

"Intervention as of right under Rule 24(a)(2) is granted when all four of the following conditions are met: (1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006). Although a party must typically file a motion to intervene under Rule 24(a)(2), here, even assuming that the Attorney General was not a party to the Surrogate's Court case, the Court construes the Attorney General's submissions as such a motion and grants that motion. *See id.* at 382 ("The proper procedure would have been for the district court to construe [a non-party's] letter submissions as a motion to intervene under [Rule 24].").

Here: (1) the Attorney General submitted a timely letter brief in response to this Court's order for briefing by the parties on the issue of jurisdiction, (Dkt. Nos. 12, 26); (2) the Attorney General previously participated in proceedings before the Surrogate's Court regarding the petition, (*see* Dkt. No. 9-10, at 3 (showing that the Attorney General was served with the September 28, 2021 order to show cause); Dkt. No. 9-11, at 2 (noting the Attorney General's appearance on the return date of the order to show cause)); (3) the Attorney General is charged by statute with enforcement of the rights of the beneficiaries of charitable dispositions, (*See* Dkt.

4

No. 26, at 1 (citing N.Y. Est. Powers & Trusts Law § 8-1.1(f)); and (4) AIIS would not be able to adequately represent the Attorney General's interest in representing the beneficiaries of charitable dispositions, (*see id.*). Accordingly, even if not a party to the underlying proceedings, the Attorney General is entitled to intervention as of right under Rule 24(a)(2), and the Court will therefore consider its submissions on this matter.

## III.   BACKGROUND[2]

### A.   Background Preceding the October 19, 2021 Notice of Removal

Albert B. Grossman created a testamentary charitable remainder trust ("the Trust") in his will, which was "duly admitted to probate" in Surrogate's Court in 1986. (Dkt. No. 9-3, at 12; Dkt. No. 9-13, at 2). He left his wife, Sally Grossman, power of appointment over the Trust, (Dkt. No. 9-3, at 13), and named his wife and Hoffman (among others) trustees of all trusts created under the will, including the charitable remainder trust, (*id.* at 18).

On March 12, 1986, the date Albert Grossman's will was probated, the Surrogate's Court issued letters of trusteeship to Hoffman and Sally Grossman. (Dkt. No. 28-2; Dkt. No. 28-3, at 2). In June 2004, Hoffman and Sally Grossman petitioned the Surrogate's Court seeking permission to sell Trust assets. (Dkt. No. 28-3). The Surrogate's Court granted that request on August 9, 2004. (Dkt. No. 28-4). Sally Grossman died on March 12, 2021, leaving behind a last will and testament, which was admitted to probate in Surrogate's Court on May 7, 2021. (Dkt. No. 1-1, at 4; Dkt. No. 28-6). In her will she exercised "the power of appointment given to [her] by [her] late husband Albert B. Grossman under the testamentary charitable remainder trust created" in his will, and appointed the principal of the Trust to AIIS. (Dkt. No. 9-13, at 2).

---

[2] The Facts are drawn from the notice of removal and attached exhibits, (Dkt. Nos. 1, 1-1, and 1-2), the petition filed in Surrogate's Court, (Dkt. No. 2), and the affidavits in support of, and in opposition to the motion for a temporary restraining order, and attached exhibits. (Dkt. Nos. 9-2 to 9-14, 11, 23, 28).

Hoffman disputes the validity of that appointment. On August 2, 2021, he wrote a letter to counsel for AIIS, expressing that, as trustee, he did not recognize Sally Grossman's right to designate the charitable remainder of Albert Grossman's estate, "except to the extent of property granted to Ms. Grossman as her marital share of the Estate." (Dkt. No. 9-4, at 7–8).

On September 21, 2021, the President of AIIS filed a petition in Surrogate's Court pursuant to N.Y. Surr. Ct. Proc. Act § 2102. (Dkt. No. 1-1, at 4–6). The petition alleges that AIIS is entitled to the assets in the Trust in accord with Sally Grossman's exercise of her power of appointment. (*Id.* at 4–5). The petition requests an order:

> 1. Declaring the validity of decedent's exercise of her power of appointment,
> 2. Directing trustee Peter M. Hoffman to preserve all principal of the said trust during the pendency of these proceedings so that the decedent's exercise of her power of appointment is not thwarted or imperiled,
> 3. Directing trustee Peter M. Hoffman to file his final accounting of the Albert B. Grossman charitable remainder trust,
> 4. Directing the turnover of trust assets to petitioner, and
> 5. Such other and further relief as to the court may seem just and proper.

(*Id.* at 5). The petition identifies Hoffman as a "person[] interested upon whom service of process is required," as trustee of the charitable remainder trust of Albert B. Grossman. (*Id.*). On September 28, 2021, the Surrogate's Court issued an order to show cause in response to AIIS's petition, directing Hoffman to show cause why an order should not be made pursuant to the petition. (*Id.* at 2).

On October 8, 2021, prior to the removal that led to the present, related action, Hoffman filed a separate action in this Court against AIIS, seeking a declaratory judgment that: (1) the assets of the Trust remain subject to Albert Grossman's will "for the charitable purpose therein designated"; (2) Sally Grossman's power of appointment in Albert Grossman's will "applies only to her pecuniary bequest," distributed to her before her death or, alternatively, "only to the

6

income of the Grossman Foundation"; and (3) Hoffman is entitled to receive, from the corpus and income of the Trust, executor fees and trustee fees provided for in New York Surrogate's law. *Hoffman v. Am. Inst. of Indian Studies*, Case No. 21-cv-1105, Dkt. No. 1, at 6.

On October 13, 2021, the Surrogate's Court issued an order granting Hoffman's request to adjourn the motion return date for the order to show cause; the order further provides that Hoffman is prohibited from "encumbering, assigning, transferring, pledging, hypothecating or in any manner spending, trust assets" without permission from the Surrogate's Court. (Dkt. No. 9-11, at 2). Hoffman filed the notice of removal at issue here, removing the Surrogate's action to this Court on October 19, 2021. (Dkt. No. 1).

### B. Background Following the October 19, 2021 Notice of Removal

On October 21, 2021, counsel for AIIS submitted an affirmation to the Surrogate's Court contending that Hoffman should be removed as trustee and that Trust assets should be turned over to the court, because Hoffman was convicted in federal court of wire fraud, mail fraud, and conspiracy in 2017, and had been disbarred as a lawyer in California. (Dkt. No. 9-7, at 2). That same day, the Surrogate's Court issued an order finding that AIIS had established Hoffman's federal criminal conviction and disbarment, of which he had failed to notify the Surrogate's Court, which "disqualifies him to serve as a fiduciary under [NY Surr. Ct. Proc. Act §§] 707(1)(d) and (e)." (Dkt. No. 23-2; Dkt. No. 9-8, at 2–3). The court therefore revoked Hoffman's "letters of trusteeship in the Albert B. Grossman Testamentary Charitable Remainder Trust issued March 12, 1986," and further ordered that Hoffman "turn over, transfer or assign" to the court "all assets" of the Trust "for safekeeping pending further order" of the court. (Dkt. No. 23-2). The Surrogate's Court further ordered that Hoffman "file a petition for final judicial settlement of his account as trustee" by November 30, 2021. (*Id.* at 2–3).

On October 25, 2021, in the present case, Hoffman moved for a temporary restraining order and, alternatively, relief from a final order. (Dkt. No. 9). Hoffman sought an order: (1) enjoining AIIS from filing or attempting to obtain any orders in Surrogate's Court based on the removed petition; (2) enjoining all orders issued by Surrogate's Court after the notice of removal was filed on October 19, 2021; (3) enjoining all proceedings in Surrogate's Court until final judgment on the removed petition and related proceeding in this Court; (4) granting relief from the Surrogate's Court's October 21, 2021 order; and (5) declaring that Hoffman "shall be and remain" trustee until further order of the Court. (Dkt. No. 9). On November 12, 2021, Hoffman moved for a pre-motion conference for "advice and instructions concerning the sale of the principal remaining assets of the Trust . . . pursuant to the terms of the non-binding Letter of Intent . . . dated September 24, 2021." (Dkt. No. 19, at 1). Hoffman asks this Court to "confirm his authority to enter into and perform formal contracts." (*Id.* at 6).

## IV.     SUBJECT MATTER JURISDICTION

### A.     Standard of Review

"Generally, any civil suit initiated in state court over which a district court would have had original jurisdiction 'may be removed by . . . the defendants, to the district court of the United States for the district . . . embracing the place where such action is pending.'" *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 704 (2d Cir. 2019) (quoting 28 U.S.C. § 1441(a)). "Section 1441 permits removal on the basis of either federal question jurisdiction or diversity of citizenship." *Id.* (citing *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998)). The district courts have diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 (2d Cir. 2011) (quoting 28 U.S.C. § 1332(a)). "To remove a

case based on diversity jurisdiction, the diverse defendant must aver that all of the requirements of diversity jurisdiction have been met." *Id.* (citing 28 U.S.C. § 1446(a)).

If, however, a district court determines that it lacks subject-matter jurisdiction over a case removed from state court, the case must be remanded. 28 U.S.C. § 1447(c). "When a party challenges the removal of an action from state court, the burden falls on the removing party to establish its right to a federal forum by competent proof." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, No. 00-cv-1898, 2006 WL 1004725, at *2, 2006 U.S. Dist. LEXIS 20575, at *7 (S.D.N.Y. Apr. 17, 2006). "In making this determination, courts are permitted to look to materials outside the pleadings, 'includ[ing] documents appended to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis.'" *Schulman v. MyWebGrocer, Inc.*, No. 14-cv-7252, 2015 WL 3447224, at *1, 2015 U.S. Dist. LEXIS 68954, at *3 (E.D.N.Y. May 28, 2015) (alteration in original) (quoting *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010)). In light of "the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).

### B. Application of the Probate Exception

AIIS and the Attorney General argue that the Court should remand the action to state court pursuant to the "probate exception" to otherwise proper federal diversity jurisdiction. (Dkt. Nos. 20, 26). "The 'probate exception' is an historical aspect of federal jurisdiction that holds 'probate matters' are excepted from the scope of federal diversity jurisdiction." *Lefkowitz v. Bank of N.Y.*, 528 F.3d 102, 105 (2d Cir. 2007) (citing *Marshall v. Marshall*, 547 U.S. 293, 307 (2006). "[T]he probate exception reserves to state probate courts the probate or annulment of a

9

will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Marshall*, 547 U.S. at 293, 311–12. The Second Circuit has accordingly held that "so long as a plaintiff is not seeking to have the federal court administer a probate matter or exercise control over a *res* in the custody of a state court, if jurisdiction otherwise lies, then the federal court may, indeed must, exercise it." *Lefkowitz*, 528 F.3d at 106*; see also Groman v. Cola*, No. 07-cv-2635, 2007 WL 3340922, at *5, 2007 U.S. Dist. LEXIS 82564, at *16 (S.D.N.Y. Nov. 7, 2007) ("Determining whether [a] case falls within the probate exception involves a two-step inquiry: first, whether the action requires 'the probate or annulment of a will [or] the administration of a decedent's estate'; and second, whether the action requires the court to 'dispose of property that is in the custody of a state probate court' . . . If [the] proceeding requires the Court to take either of these actions, federal court jurisdiction is barred under the probate exception." (citing *Marshall*, 547 U.S. at 311–12)).

      Here, the parties agree that probate of the estates of Albert and Sally Grossman is complete, and thus, this Court is not asked to probate a will. (Dkt. No. 15, at 5; Dkt. No. 20, at 7). However, they disagree over whether this action requires the Court to control property in the custody of the Surrogate's Court or administer an estate. Hoffman argues, inter alia, that the probate exception does not apply because the Surrogate's Court has not exercised control over the Trust since probate of Albert Grossman's estate, and the petition requests a *return* of property to an estate rather than disposal of Trust property. (Dkt. No. 15, at 5–7). The Attorney General however, notes that, contrary to Hoffman's assertion, the Surrogate's Court has in fact exercised *in rem* jurisdiction over the Trust on several occasions, and AIIS is clearly seeking the

*disposition* of trust assets, not the *return* of trust assets. (Dkt. No. 26, at 3–4). AIIS and the Attorney General argue that the relief sought in the petition "necessarily involve[s] administration of the Trust and money contained in the Trust," (Dkt. No. 20, at 7; Dkt. No. 26, at 4), and that disbursements under the Trust remain under the "continuing jurisdiction" of the Surrogate's Court, (Dkt. No. 20, at 7–8). The Court agrees with AIIS and the Attorney General that resolving the petition would require this Court to exercise control over Trust property that is under the supervisory control of the Surrogate's Court.

"The prohibition against 'endeavoring to dispose of property that is in the custody of a state probate court' is, the Supreme Court has explained, 'essentially a reiteration of the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." *Mercer v. Bank of New York Mellon, N.A.*, 609 F. App'x 677, 678 (2d Cir. 2015) (summary order) (citing *Marshall*, 547 U.S. at 311–12). "This general principle applies equally when, as in this case, the *res* in question is not property of an estate but property of a trust." *Id.*

"New York law gives Surrogate's Courts extensive powers over testamentary trusts." *Id.* at 679 (citing N.Y. Surr. Ct. Proc. Act §§ 1501–1509). Here, the Surrogate's Court exercised supervisory control over the Trust on several occasions prior to the removal of this action by: (1) issuing letters of trusteeship to Sally Grossman and Hoffman in 1986 pursuant to Albert Grossman's will, (Dkt. No. 28-2); (2) authorizing a sale of real property held by the Trust on August 9, 2004, (Dkt. Nos. 28-3, 28-4); (3) issuing an order to show cause on September 28, 2021, in response to AIIS's petition, (Dkt. No. 1-1, at 3); and (4) issuing an order on October 13, 2021, prohibiting Hoffman from transferring Trust assets without further permission from the

Surrogate's Court, (Dkt. No. 9-11, at 2).[3] Courts have found that similar actions by a Surrogate's Court constitute sufficient supervisory control over a trust to preclude the district court from exercising control over the trust. *See, e.g. Mercer*, 609 F. App'x at 679 (declining to "express any view on the minimum amount of activity that would have been sufficient to give the Surrogate's Court supervisory control over the Trust," but finding that issuing letters testamentary and letters of trusteeship, hearing oral argument and denying summary judgment on a petition for removal of trustees, and issuing a temporary restraining order over trust distributions, "as a whole," precluded federal court control over the trust); *In re Thomas & Agnes Carvel Found.*, 36 F. Supp. 2d 144, 150 (S.D.N.Y. 1999) (finding the Surrogate's Court had "clearly . . . taken control of the property subject to this claim for injunctive relief" by signing an Order to Show Cause, granting a Temporary Restraining Order, and by "restraining its transfer or encumbrance"). Here, AIIS's request for the distribution of assets from a testamentary trust under the supervisory control of the probate court falls within the probate exception. *See, e.g., Kennedy v. Trustees of Testamentary Trust of Will of Kennedy*, 406 F. App'x 507, 509–10 (2d Cir. 2010) (ruling that the plaintiff's request for assets from a testamentary trust seeks "property that is in the custody of a state probate court" and federal jurisdiction barred by the probate exception); *cf. Marcus v. Quattrocchi*, 715 F. Supp. 2d 524, 532–33 (S.D.N.Y. 2010) (finding claims outside the probate exception in part because "Plaintiffs do not ask the Court to distribute assets from an existing estate or trust").[4]

---

[3] The Court also notes that shortly after Hoffman filed the notice of removal, Surrogate's Court issued an order revoking Hoffman's letters of trusteeship. (Dkt. No. 23-2).

[4] Hoffman argues that a power of appointment is not "property," and was thus not an asset in Sally Grossman's estate at the time of her death. (Dkt. No. 15, at 6). It is true that a *res* is not "within the probate court's jurisdiction if it is was not part of the estate at the time of the decedent's death." *Marcus v. Quattrocchi*, 715 F. Supp. 2d 524, 534 (S.D.N.Y. 2010). However, the property at issue is the Trust assets which were in Albert Grossman's possession at the time of his death.

Hoffman's assertion that the petition requests the *return* of property from the Trust to Sally Grossman's estate is without merit. (Dkt. No. 15, at 6; Dkt. No. 35, at 4). As in *Kennedy*, the petitioner here seeks the distribution of assets in a testamentary trust under the custody of state probate court. *See Kennedy*, 406 F. App'x at 509–10. This case is not, as Hoffman contends, on "all fours" with *Marcus*, which involved claims for tort damages for mismanagement of a terminated trust. *See* 715 F. Supp. 2d at 533.

Furthermore, the petition does not raise any claims against Hoffman personally, or seek damages, claims which typically do not fall within the probate exception. (*See* Dkt. No. 1-1, at 5); *See Kennedy*, 406 F. App'x at 509–10 (noting that courts have found that the probate exception applies to claims seeking "in essence, disgorgement of funds that remain under the control of the Probate court . . . but not to claims of breach of fiduciary duty" seeking personal damages); *Marshall*, 547 U.S. at 312 (finding tort claims seeking an *in personam* judgment did not involve administration of an estate); *Lifschultz v. Lifschultz*, No. 12-cv-1881, 2012 WL 2359888, at *6, 2012 U.S. Dist. LEXIS 86639, at *16 (S.D.N.Y. June 20, 2012) (finding tort claims against defendants in their personal capacities did not require administration of an estate

---

Hoffman further argues that "the objecting party [must] show that the Surrogate's Court had exclusive jurisdiction over the dispute and exclusive control of the alleged '*res*' under New York law in the first place." (Dkt. No. 15, at 6 (emphasis in original) (citing *Abercrombie v. Andrew College*, 438 F. Supp. 2d 243, 252–53 (S.D.N.Y. 2006)). *Abercrombie* however, did not involve property under the supervisory control of a Surrogate's Court, and the language upon which Hoffman relies did not "obliterate . . . the probate exception," which bars this Court from "control[ing] property in the custody of the state court." *Mercer v. Mercer*, No. 13-cv-5686, 2014 WL 3654667, at *9, 2014 U.S. Dist. LEXIS 100744, at *28–29 (E.D.N.Y. May 22, 2014)*, report-recommendation adopted in part* 2014 WL 3655657, 2014 U.S. Dist. LEXIS 100703 (E.D.N.Y. July 21, 2014)*, aff'd sub. nom Mercer v. Bank of N.Y. Mellon, N.A.*, 609 F. App'x 677 (2d Cir. 2015) (summary order).

Finally, Hoffman argues that the Surrogate's Court "never had subject matter jurisdiction at all over this dispute between AIIS and Hoffman, both living persons." (*Id.* (emphasis omitted) (citing *Matter of O'Connell*, 951 N.Y.S.2d 28 (N.Y. App. Div. 2012)). But the petition was brought pursuant to N.Y. Surr. Ct. Proc. Act § 2102, which specifically allows a proceeding to be commenced to require action by a fiduciary in Surrogate's Court. The court in *Matter of O'Connell* only held that probate court jurisdiction "does not extend 'to *independent matters* involving controversies between living persons.'" 951 N.Y.S.2d at 30 (quoting *Matter of Deans*, 889 N.Y.S.2d 668 (N.Y. App. Div. 2009)) (emphasis added). Here, the petition is not an "independent matter," but rather involves the assets of a trust under the control of Surrogate's Court.

13

because "any *in personam* claims . . . for which a plaintiff 'seeks damages from [a defendant] personally rather than assets or distributions from [an] estate' are within the jurisdiction of the federal courts" (citing *Lefkowitz*, 528 F.3d at 107–08)).

Here, the petition is captioned "In the Matter of Estate of Sally Grossman"; Hoffman is named only as an interested person in his capacity as "Trustee of charitable remainder trust of Albert B. Grossman." (Dkt. No. 1-1, at 4–5). The petition contains no *in personam* claims seeking damages from Hoffman personally that would fall within federal court jurisdiction. (*Id.*).[5]

In sum, because resolution of the petition would require this Court to control property that is in the custody of Surrogate's Court, the probate exception applies, and the Court does not have subject matter jurisdiction over this matter. The Court therefore remands this case back to the Surrogate's Court for further proceedings.[6]

### C. Related Case

In consideration of this ruling, the Court will provide all parties the opportunity to submit briefing addressing whether the related case *Hoffman v. Am. Inst. of Indian Studies*, No. 21-cv-1105, should also be dismissed pursuant to the probate exception or, alternatively, under the principles of *Colorado River* abstention. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18 (1976).

---

[5] Hoffman argues that "remand is still not proper with respect to the undeniable *in personam* claims of Mr. Hoffman for his executor and trustee fees, to honor the contract with the documentary filmmakers and to donate the Grossman archives to an institution that will preserve them for posterity." (Dkt. No. 15, at 7). But these claims also seek disposition of Trust property in the custody of Surrogate's Court; they are not claims for personal liability or damages.

[6] In light of this ruling, the Court need not address AIIS' additional arguments that this Court does not have diversity jurisdiction, and that Hoffman was not a "defendant" in the underlying case, as required for removal under 28 U.S.C. § 1441(a). (*See* Dkt. No. 20).

14

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that this action is **REMANDED** to the Surrogate's Court of the State of New York, County of Ulster for all further proceedings, and it is further

**ORDERED** that the parties may submit letter briefs not exceeding ten pages by January 4, 2022, addressing whether related case *Hoffman v. Am. Inst. of Indian Studies*, No. 21-cv-1105, should be dismissed pursuant to the probate exception or, alternatively, under the principles of *Colorado River* abstention, and it is further

ORDERED that the Clerk is directed to file a copy of this order in the related case *Hoffman v. Am. Inst. of Indian Studies*, No. 21-cv-1105, and it is further

**ORDERED** that the Clerk is directed to mail a copy of this Memorandum-Decision and Order to the Clerk of the Surrogate's Court of the State of New York, County of Ulster for filing in *In the Matter of the Estate of Sally Grossman*, File No. 2021-207.

**IT IS SO ORDERED.**

Dated: December 8, 2021
Syracuse, New York

Brenda K. Sannes
U.S. District Judge

15